

FILED

AUG 1 3 2014

CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| DONALD EDWARD FREIDEL, | ) | Civ. 12-4203-LLP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | ORDER GRANTING DEFENDANTS' |
| DENNIS KAEMINGK, | ) | MOTION FOR SUMMARY |
| Secretary of Corrections; | ) | JUDGMENT |
| ROBERT DOOLEY, | ) | |
| Warden, Mike Durfee State Prison; and | ) | |
| SOUTH DAKOTA DEPT. OF HEALTH, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Donald Edward Freidel, is an inmate at the Mike Durfee State Prison (MDSP) in Springfield, South Dakota. On November 23, 2012, plaintiff filed a pro se civil rights lawsuit pursuant to 42 U.S.C. § 1983, alleging that defendants acted with deliberate indifference toward his serious medical need, thus violating the Eighth Amendment's prohibition on cruel and unusual punishment. Docket 1. To remedy the alleged constitutional violation, Freidel requested that the Court order defendants to amend the Adult Offender Health Plan, pay for a hearing examination, and issue new hearing aids. *Id.* at 5.

The Court screened Freidel's complaint pursuant to 28 U.S.C. § 1915. Docket 6. In doing so, the Court dismissed Freidel's claims for money damages, which were barred by the limitations of § 1983, and directed that the complaint be served upon defendants. *Id.* Defendants answered Freidel's complaint on March 19, 2013, denied all claims against them, and asserted various affirmative defenses. Docket 10. Defendants now move for summary judgment. Docket 12. Freidel has not responded to the motion for summary judgment and the time for response has passed. The Court has considered the arguments set forth by defendants, and for the reasons set forth herein, the Court grants defendants' motion for summary judgment.

## FACTUAL BACKGROUND

According to defendants' statement of undisputed material facts (Docket 14), to which Freidel has not objected[1]:

Plaintiff is an inmate in the custody of the South Dakota Department of Corrections (SDDOC). Docket 14 at ¶ 1. He is incarcerated at MDSP. Docket 1. Both prior to and during his present incarceration, Freidel has worn binaural hearing aids. Docket 14 at ¶ 10. On January 5, 2007, while incarcerated, Freidel was seen by an ear, nose, and throat doctor for a hearing evaluation and hearing aid consultation. *Id.*; Docket 15-1 at 1. At that appointment, the doctor concluded that Freidel suffered from "a moderately severe to severe sensorineural hearing loss bilaterally" and recommended that his hearing aids be replaced following approval of SDSP health services. Docket 14 at ¶¶ 11–12; Docket 15-1 at 1. Freidel received new binaural hearing aids on March 1, 2007, at which point he was counseled regarding the care and operation of the hearing aids and underwent testing to verify that the hearing aids were functioning properly. Docket 14 at ¶ 12; Docket 15-1 at 2.

According to defendants' records, Freidel did not submit another formal complaint with regard to his hearing condition until March 29, 2010, when he sent a letter to unit staff requesting to be transferred to a particular housing unit so as to avoid the noise generated by the ventilation system in other housing units.[2] Docket 13-3. More specifically, Freidel requested that he be moved "to a quieter location not back to a noisier one" because his "hearing aids seem[ed] to be tuned to it." *Id.* In other words, Freidel's hearing aids, although overly sensitive, appeared to be functioning in March 2010. By June 4, 2011, however, Freidel had contacted Secretary Kaemingk with a

---

[1] Pursuant to Local Rule 56.1.D, "[a]ll material facts set forth in the movant's statement of material facts will be deemed to be admitted unless controverted by the opposing party's statement of material facts."

[2] The records submitted by defendants demonstrate that Freidel received ear irrigation on several occasions in 2009. Docket 15-1 at 9. On August 1, 2010, however, Freidel wrote to Dr. Wallinga and communicated that he would no longer be accepting "the ear cleaning that ha[d] been sched- as a monthly event at Health Services." Docket 15-1 at 10. Freidel did not provide a reason for refusing such care, but added that he "absolve[d] Health Services of any consequences for this decision." *Id.*

complaint regarding "a serious problem [that] ha[d] arisen as the result of a revised SD Dept. of Health Directive." Docket 14 at ¶ 14; Docket 13-4. Freidel reported that he was unable to get his defective hearing aid repaired by health services because a revised health services guideline stated that "the State will not be responsible for the purchase of a new or repair/replacement of existing hearing aids." Docket 14 at ¶ 16; Docket 13-4; Docket 13-5.

In response to Freidel's letter, SDDOC officials contacted the South Dakota Department of Health (SDDOH) and requested that the SDDOH review its revised guidelines regarding hearing aids. Docket 14 at ¶ 17; Docket 13-1 at ¶ 9; Docket 13-2 at ¶ 4. The SDDOH complied with such request in June 2011, and on June 28, 2011, Freidel was notified that the health services guidelines had been revised to allow for the repair or replacement of existing hearing aids when "considered a medical necessity."[3] Docket 14 at ¶ 18; Docket 13-1 at ¶ 9; Docket 13-2 at ¶ 5; Docket 13-7. This revision was incorporated into the "Adult Offender Health Plan" in January 2012. Docket 14 at ¶ 21; Docket 13-6 at 7, 11. As stated in the Adult Offender Health Plan, the determination of whether hearing aids are medically necessary is left to the discretion of SDDOH Correctional Health medical providers. Docket 14 at ¶ 22; Docket 13-6 at 7. "Officials at the MDSP/SDDOC defer to the expertise and medical judgment of DOH medical providers in such matters." Docket 14 at ¶ 22; Docket 13-2 at ¶ 11.

The SDDOH medical staff have determined that Freidel's hearing impairment does not rise "to the level of a sufficiently serious medical need such that he cannot function in prison without the use of a hearing aid." Docket 14 at ¶ 24; Docket 13-1 at ¶ 16. Although medical staff concede that "Freidel would/could benefit from having his hearing aids repaired/replaced," they have not found that repairing or replacing Freidel's hearing aids is "medically necessary." Docket 14 at ¶ 23; Docket 13-1 at ¶ 15. Freidel has been seen by medical staff on several recent occasions to address problems with swelling in his lower right leg. Docket 14 at ¶ 25. A report from one such examination with Dr. Melvin Wallinga indicates that on April 4, 2013, Freidel's hearing was greatly decreased and he could only hear by "cupping his hand around his left ear and with [the

---

[3] As defined in the Adult Offender Health Plan, " 'medical necessity' . . . relates to those services and supplies that are required for diagnosis or treatment of illness or injury OR which, if omitted, would adversely affect the patient's condition[.]" Docket 13-6 at 3.

physician] talking very loudly." Docket 15-1 at 4. The same report further indicated "chronic hearing loss with malfunctioning of hearing aids." *Id.* Nonetheless, Dr. Wallinga noted that he "c[ould] not, at the present time, say with any degree of medical certainty that Inmate Freidel's hearing impairment rises to the level of a sufficiently serious medical need such that he cannot function in prison without the use of a hearing aid." Docket 13-1 at ¶ 16.

## STANDARD OF REVIEW

"Summary judgment is appropriate when the evidence,[4] viewed in a light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law." *Clark v. Kellogg, Co.*, 205 F.3d 1079, 1082 (8th Cir. 2000); *see also* Fed. R. Civ. P. 56(a). "Once the motion for summary judgment is made and supported, it places an affirmative burden on the non-moving party to go beyond the pleadings and by affidavit or otherwise designate specific facts showing that there is a genuine issue for trial." *Commercial Union Ins. Co. v. Schmidt*, 967 F.2d 270, 271 (8th Cir. 1992) (internal quotations and citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although "the court is required to . . . give [the nonmoving] party the benefit of all reasonable inferences to be drawn from the underlying facts," *Vette Co. v. Aetna Cas. & Sur. Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980), the nonmoving party may not "rest upon mere denials or allegations." *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002). Instead, the nonmoving party must "set forth specific facts sufficient to raise a genuine issue for trial." *Id.*

Prisoners who proceed pro se are entitled to the benefit of liberal construction at the pleading stage. *Quam v. Minnehaha Cnty. Jail*, 821 F.2d 522, 522 (8th Cir. 1987). Nonetheless, the summary judgment standard set forth in Rule 56 of the Federal Rules of Civil Procedure remains applicable to prisoners proceeding pro se. *Id.* The district court is not required to "plumb the record in order to find a genuine issue of material fact." *Barge v. Anheuser-Busch, Inc.*, 87 F.3d

---

[4] The evidence includes the pleadings, depositions, documents, electronically stored information, stipulations, answers to interrogatories, admissions, and affidavits. Fed. R. Civ. P. 56(c).

4

256, 260 (8th Cir. 1996). Moreover, the court is not "required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Id.* Courts must remain sensitive, however, "to the special problems faced by prisoners attempting to proceed pro se in vindicating their constitutional rights, and [the Eighth Circuit does] not approve summary dismissal of such pro se claims without regard for these special problems." *Nickens v. White*, 622 F.2d 967, 971 (8th Cir. 1980).

## DISCUSSION

Defendants assert that the South Dakota Department of Health is entitled to summary judgment because, as a state agency, it cannot be sued under § 1983. Docket 13. Defendants further assert that they are entitled to summary judgment on Freidel's Eighth Amendment claim because they did not act with deliberate indifference toward Freidel's serious medical need by failing to provide him with functioning hearing aids. *Id.*

## I.    The South Dakota Department of Health Is Entitled to Summary Judgment on Freidel's Deliberate Indifference Claim.

Pursuant to 42 U.S.C. § 1983,

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

In considering the scope of this statute, the Supreme Court has concluded that "a State is not a 'person' within the meaning of § 1983 . . . ." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65 (1989). Thus, "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Id.* at 66.

In the instant case, Freidel has brought his § 1983 action against the South Dakota Department of Health in its official capacity. Docket 1 at 2. As defendants have articulated, the SDDOH is a state entity, and therefore not a "person" within the meaning of § 1983. Docket 13 at 1–2. Accordingly, Freidel is barred from bringing a § 1983 action against the SDDOH, and the SDDOH is entitled to summary judgment on Freidel's deliberate indifference claim.

## II.     Defendants Kaemingk and Dooley Are Entitled to Summary Judgment on Freidel's Deliberate Indifference Claim.

"[D]eliberate indifference to serious medical needs of prisoners constitutes 'the unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104–05. But "this does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle*, 429 U.S. at 105; *see also Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)) ("'[S]ociety does not expect that prisoners will have unqualified access to health care.'").

The deliberate indifference standard includes both an objective and subjective component. *Dulany*, 132 F.3d at 1239 (citing *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). The plaintiff "must demonstrate (1) that he suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Id.* (citing *Coleman*, 114 F.3d at 784). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman*, 114 F.3d at 784. To be liable for deliberately disregarding medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Allegations of negligence will not suffice. *See Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) ("The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.").

The issue before this Court, then, is whether Freidel's hearing impairment constitutes a serious medical need and, if so, whether defendants acted with deliberate indifference toward the substantial risk of harm posed by the serious medical need. With regard to the first question, the Court finds that there is an issue of material fact as to whether Freidel's hearing impairment

6

constitutes a serious medical need. Although Dr. Wallinga asserts that Freidel's hearing impairment "does not create a substantial interference with his daily activities within the institution," Docket 13-1 at ¶ 17, the additional evidence submitted by defendants tells a different story. For example, on January 5, 2007, "[p]ure tone testing show[ed] a moderately severe to severe sensorineural hearing loss" in each of Freidel's ears (Docket 15-1 at 2); on March 10, 2010, the individual conducting Freidel's annual physical noted that Freidel was hearing impaired (Docket 15-1 at 8); and most recently, on April 4, 2013, Dr. Wallinga himself concluded that Freidel had "very little hearing" without his hearing aids, "resulting in difficulty in communicating with him." Docket 15-1 at 4. In the same report, Dr. Wallinga noted that Freidel's "[h]earing is greatly decreased and he only hears with cupping his hand around his left ear and with me talking very loudly." *Id.* Lastly, Dr. Wallinga reported that Freidel suffered from "[c]hronic hearing loss with malfunctioning of hearing aids[,]" and noted that Freidel "would certainly benefit" from having his hearing aids repaired. *Id.* Therefore, based on this information, the Court concludes that there is a genuine dispute as to whether Freidel's hearing impairment constitutes a serious medical need.

Nonetheless, even assuming that Freidel's hearing impairment does constitute a serious medical need, the Court finds that Freidel has not presented specific facts to demonstrate a genuine dispute regarding whether the defendants acted with deliberate indifference toward his hearing impairment. Defendants argue that they refused to repair or replace Freidel's hearing aids in accordance with the Adult Offender Health Plan, which provides for the repair or replacement of hearing aids when "a DOH Correctional Health medical provider orders that hearing aid[s] are medically necessary . . . ." Docket 13; Docket 13-6 at 7. As defendants have asserted and Freidel has not disputed, Freidel's "hearing impairment does not create a substantial interference with his daily activities[,]" and "medical staff have been unable to determine that repair/replacement of [Freidel's] hearing aids is 'medically necessary.' " Docket 13 at 17; Docket 13-1 at ¶ 17.

In lieu of repairing or replacing Freidel's hearing aids, medical professionals at the SDDOC concluded that Freidel would benefit from monthly ear irrigations since his hearing impairment was partially attributable to the excessive accumulation of cerumen in his ear canals. Docket 13 at 17; Docket 13-1 at ¶¶ 20–21. Freidel, however, eventually refused this treatment and provided

7

no explanation for such refusal. Docket 15-1 at 10. It appears, therefore, that Freidel merely disagrees with the judgment of medical professionals concerning his particular course of treatment and is choosing not to avail himself of alternative remedies to his hearing impairment. Because "[d]isagreement with a medical judgment is not sufficient to state a claim for deliberate indifference to medical needs[,]" *Davis v. Hall*, 992 F.2d 151, 153 (8th Cir. 1993), and because "an inmate is not entitled to any particular course of treatment[,]" *Dulany*, 132 F.3d at 1240, the Court finds there is no genuine dispute as to whether defendants acted with deliberate indifference toward Freidel's hearing impairment. Defendants are therefore entitled to summary judgment on Freidel's deliberate indifference claim. Accordingly, it is

ORDERED that defendants' motion for summary judgment (Docket 12) is granted.

Dated this 13th day of August, 2014.

BY THE COURT:

LAWRENCE L. PIERSOL
UNITED STATES DISTRICT JUDGE

8